Allen F. Morton appeals from the dismissal of his complaint against Dr. Cecil H. Prescott, a psychiatrist in private practice. Morton's complaint alleged that Prescott had negligently discharged a patient who assaulted Morton after being discharged. Other claims in this action were the subject of Morton v. Jackson Hospital Clinic, 548 So.2d 1015 (Ala. 1989), in which the facts are stated in full. In brief, the facts are that Prescott admitted Pendarvis Hunter to Jackson Hospital on October 27, 1986, following an altercation between Hunter and another patient at a mental health treatment facility. After unsuccessfully attempting to transfer Hunter to the Veterans' Administration Hospital, Prescott readmitted Hunter to Jackson Hospital on October 31, 1986. Hunter received treatment and was released on November 5, 1986. He assaulted Morton on November 6, 1986.
Morton argues that his complaint should not have been dismissed, because, he says, Prescott breached his duty of due care by discharging Hunter when he posed a danger to society. He alleges that Hunter had a history of violence, that Prescott was aware of that history, and that Hunter was admitted to Jackson Hospital on an emergency basis and could not be controlled. Morton also expressly asks this Court to overruleDonahoo v. State, 479 So.2d 1188 (Ala. 1985), which held that there is no duty to prevent an attack on a third person by an aggressor unless it is known or should be known that the aggressor might be a danger to a specific individual.
In contrast, Prescott argues that Morton's complaint fails to allege any facts tending to show that he owed a duty to Morton, or, assuming arguendo that there was a duty, that he breached that duty. He points out that Hunter was not involuntarily committed and was not the subject of any court order, but was admitted to the *Page 915 
hospital for treatment as a voluntary admission patient. He argues that Morton's complaint failed to allege that Morton and Hunter were anything but strangers and that there was no reason to expect that Hunter was a danger to Morton, because Hunter had made no specific threat. He concludes that the trial court correctly found that he owed no legal duty to Morton and that the complaint was properly dismissed.
A review of the complaint supports Prescott's argument that Morton fails to allege that Hunter had made any specific threat to harm Morton. At most the complaint states that Hunter was a violent, dangerous person who posed a danger to the citizens of the community, including Morton. Even assuming that all of these facts and conclusions are true, the allegations are still insufficient to show a legal duty on the part of Prescott to protect Morton from specific harm.
It is settled that for one to maintain a negligence action the defendant must have been subject to a legal duty.Bryant v. Morley, 406 So.2d 394 (Ala. 1981). Absent special relationships or circumstances, a person has no duty to protect another from the criminal acts of a third person. King v.Smith, 539 So.2d 262 (Ala. 1989); Moye v. A.G. Gaston Motels,Inc., 499 So.2d 1368 (Ala. 1986); Ortell v. Spencer Companies,Inc., 477 So.2d 299 (Ala. 1985); Henley v. Pizitz Realty Co.,456 So.2d 272 (Ala. 1984); Berdeaux v. City National Bank ofBirmingham, 424 So.2d 594 (Ala. 1982); Parham v. Taylor,402 So.2d 884 (Ala. 1981).
In King v. Smith, 539 So.2d 262 (Ala. 1989), a case similar to this one, this Court declined to hold a psychiatrist liable for the criminal acts of his patient. In that case, it was alleged that Dr. Smith misdiagnosed his patient's dangerous condition and, as a result, did not provide him with proper treatment. The patient, David King, was initially confined in a psychiatric ward of a medical center and was diagnosed as suffering from alcohol abuse and a mild mental impairment. Following that diagnosis, King was released to attend an outpatient alcohol abuse program supervised by Dr. Smith. Because of repeated abnormal behavior, King was confined, reevaluated, and then released to attend the outpatient alcohol abuse program several times over the next six or seven months. It was during one of these release periods that he killed his two daughters and then committed suicide. In affirming the lower court's judgment for Smith, the Court stated that Smith's "minimum personal contacts" with King were insufficient to show a special relationship or circumstances necessary to make Dr. Smith liable for King's criminal acts and subsequent suicide.
One leading case concerning a therapist's liability for the violent actions of a patient is Tarasoff v. Regents ofUniversity of California, 17 Cal.3d 425, 131 Cal.Rptr. 14,551 P.2d 334 (1976). In that case, the patient told his therapist of his intent to kill a readily identifiable, although unnamed, girl; after he told the therapist, the therapist informed the law enforcement authorities, but failed to warn the girl or her parents. Following this, the patient killed the girl and the girl's parents filed an action against the therapist, among others, for wrongful death. The California Supreme Court held that when a therapist determines or should determine that a patient presents a serious threat of danger to another he has an obligation to use reasonable care to protect the intended victim against such danger.
Later, in Thompson v. Alameda County, 27 Cal.3d 741,167 Cal.Rptr. 70, 614 P.2d 728 (1980), the California Supreme Court narrowed the Tarasoff holding. In Thompson a juvenile offender made general threats during his confinement in a county institution regarding his intention to kill someone. Notwithstanding that it was known that the juvenile was dangerous, these threats were not directed to any specific, identifiable person. Later, when the juvenile was released he killed a young boy in his neighborhood. In refusing to extend the Tarasoff reasoning to situations involving unidentifiable victims, the California Supreme Court stated that even in a case where a person had a history of violence, *Page 916 
no duty existed when the aggressor had made only general threats of violence directed at non-identifiable victims.
In Donahoo v. State, 479 So.2d 1188 (Ala. 1985), this Court stated that it would follow the line of cases holding that in order to establish liability on the part of state officials a plaintiff must plead and prove that the officials knew or should have known that an aggressor might be a danger to a specific individual. Donahoo concerned an action filed against state officials for damages based on the release and supervision of prisoners who committed murder while out on parole. This Court held that the officials were not liable because there was no allegation that the officials had a reason to know that the prisoners posed a threat to the decedent and, therefore, that the officials did not breach a specific duty. The Court, quoting from Thompson, supra, stated:
 "[W]henever a potentially dangerous offender is released and thereafter commits a crime, the possibility of the commission of that crime is statistically foreseeable. Yet the legislature has concluded that the benefits to society from rehabilitative release programs mandate their continuance. Within this context and for policy reasons the duty to warn depends upon and arises from the existence of a prior threat to a specific identifiable victim. . . . In those instances in which the released offender poses a predictable threat of harm to a named or readily identifiable victim or group of victims who can be effectively warned of the danger, a releasing agent may well be liable for failure to warn such persons. Despite the tragic events underlying the present complaint, plaintiff's decedent was not a known, identifiable victim, but rather a member of a large amorphous public group of potential targets."
Donahoo, 479 So.2d at 1191.
Although Donahoo concerned an action against state officials, its rationale is applicable to this case. The aggressor in this instance, Hunter, like the agressors in Donahoo and Thompson, made no specific threat of harm to the victim or to any identifiable group of which the victim might have been a member. Apparently, Morton and Hunter were total strangers and Prescott had no reason to know that Hunter would attack Morton. Morton fails to allege that Prescott breached any standard of care in evaluating Hunter.
"Unless a patient makes specific threats, the possibility that he may inflict injury on another is vague, speculative, and a matter of conjecture." Brady v. Hopper, 570 F. Supp. 1333,1338 (D.Colo. 1983), aff'd, 751 F.2d 329 (10th Cir. 1984). Once these specific threats are verbalized, then the possibility of harm to third persons becomes foreseeable and the psychiatrist's duty arises. Id. See Doyle v. United States,530 F. Supp. 1278 (C.D.Cal. 1982); Hasenei v. United States,541 F. Supp. 999 (D.Md. 1982); Leedy v. Hartnett, 510 F. Supp. 1125
(M.D.Pa. 1981), aff'd, 676 F.2d 686 (3rd Cir. 1982);Mavroudis v. Superior Court, 102 Cal.App.3d 594,162 Cal.Rptr. 724 (1980); In re Estate of Votteler, 327 N.W.2d 759
(Iowa 1982); Cairl v. State, 323 N.W.2d 20 (Minn. 1982). Although we are aware of decisions holding to the contrary, the facts of those decisions, for the most part, are distinguishable from the facts of this case.
In considering a motion to dismiss, a court construes the allegations of the complaint in a light most favorable to the plaintiff, with all doubts and allegations resolved in his favor. Rice v. United Insurance Company of America,465 So.2d 1100 (Ala. 1984). A complaint should not be dismissed for failure to state a claim unless it appears beyond reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief under some cognizable theory of law. Strain v. Hinkle, 457 So.2d 394 (Ala. 1984).
Accepting the facts alleged in Morton's complaint as true and viewing them in a light most favorable to Morton, we conclude that Prescott did not owe a legal duty to Morton. Therefore, the trial court's dismissal *Page 917 
of Morton's complaint is hereby affirmed.
AFFIRMED.
HORNSBY, C.J., and SHORES, ADAMS and STEAGALL, JJ., concur.