BOLIN, Justice.
Liberty National Life Insurance Company (“Liberty National”) petitioned this Court for a writ of certiorari to review the Court of Civil Appeals’ decision (1) holding, as a matter of first impression, that § 27 — 14—3(f), Ala.Code 1975, a part of the Alabama Insurance Code, § 27-1-1 et seq., Ala.Code 1975 (“the Insurance Code”), requires an insurable interest in a life-insurance policy to exist at a point other than the time at which the policy becomes effective; and (2) reversing the trial court’s dismissal of the complaint filed by Misty Ann Barton, as administratrix of the estate of Benjamin H. Miller, Jr. (“Benjamin Jr.”), in which Barton alleged that Liberty National was negligent in allowing Leanne Jean Miller (“Leanne”), Benjamin Jr.’s stepmother, to substitute herself as beneficiary of an insurance policy insuring the life of Benjamin Jr. See Barton v. Liberty Nat’l Life Ins. Co., 209 So.3d 479 (Ala.2014). We granted Liberty National’s petition, and, for the reasons discussed below, we affirm in part and reverse in part the judgment of the Court of Civil Appeals.

*488
I. Facts and Procedural History

Liberty National issued a life-insurance policy (“the policy”) to Benjamin H. Miller, Sr. (“Benjamin Sr.”), on the life of his son, Benjamin Jr. The named beneficiary on the policy was Nona June Miller, the mother of Benjamin Sr. and grandmother of Benjamin Jr. Benjamin Sr. subsequently modified the policy to name himself as the beneficiary. On January 15, 2011, Benjamin Sr. died. On or about February 23, 2011, Leanne, Benjamin Sr.’s widow, was issued letters of administration for Benjamin Sr.’s estate. During the administration of Benjamin Sr.’s estate, Leanne contacted Liberty National and had herself substituted as the named beneficiary of the policy insuring Benjamin Jr.’s life.
On July 20, 2011, Benjamin Jr. died. Leanne, thereafter, made a claim for the life-insurance proceeds under the policy, which Liberty National paid. Barton, as administratrix of Benjamin Jr.’s estate, sued both Liberty National and Leanne. In the complaint, Barton alleged (1) that the policy was void because Leanne had no insurable interest in Benjamin Jr., her stepson; (2) that Liberty National was negligent in failing to determine at the time of the requested beneficiary change that Leanne had no insurable interest in Benjamin Jr.; and (3) that Liberty National’s negligence caused Benjamin Jr.’s estate to be deprived of the policy benefits that were payable, under the terms of the policy, to Benjamin Jr.’s estate. Barton further alleged that Leanne had been unjustly enriched in an amount equal to the proceeds paid to her that were rightfully payable to Benjamin Jr.’s estate. Barton sought a judgment from Liberty National and Leanne in the amount of $25,000, plus interest and costs.
On October 15, 2013, Liberty National filed a motion, pursuant to Rule 12(b)(6), Ala. R. Civ. P., to dismiss Barton’s complaint, in which it argued that, pursuant to § 27-14-3 of the Insurance Code, there was no requirement that Leanne have an insurable interest in the life of Benjamin Jr. at the time of the beneficiary change. Barton filed a motion in response, in which she argued that because Leanne never had an insurable interest in Benjamin Jr.’s life, Liberty National’s actions in allowing Leanne to substitute herself as beneficiary was tantamount to the creation of a “wagering” policy, which, under Alabama law, is void.
On December 15, 2013, the trial court entered an order granting Liberty National’s motion to dismiss Barton’s complaint; it subsequently entered an order denying Barton’s motion for reconsideration. On April 4, 2014, the trial court certified its December 15, 2013, order as final, pursuant to Rule 54(b), Ala. R. Civ. P. Barton appealed.
On December 12, 2014, the Court of Civil Appeals issued an opinion holding that, when “[vjiewing the Insurance Code as a whole, we agree with Barton that § 27-14-3(f) does not allow for the change of a beneficiary on the life-insurance policy of another when the proposed new beneficiary does not possess an insurable interest in the insured.” Barton v. Liberty Nat’l Life Ins. Co., 209 So.3d at 484. Based on its interpretation of § 27—24—3(f), the Court of Civil Appeals concluded that Leanne, Benjamin Jr.’s stepmother, did not have an insurable interest in Benjamin Jr. either when the policy was issued or at any time thereafter. The Court of Civil Appeals further concluded that the trial court had erred in dismissing Barton’s complaint in light of the fact that it appeared that she could, under certain circumstances, maintain a cause of action against Liberty National for negligence. For these reasons, the Court of Civil Appeals reversed the trial court’s judgment *489 of dismissal of Barton’s negligence claim against Liberty National and remanded the cause to the trial court for further proceedings. On March 13, 2015, Liberty National filed its petition for writ of certio-rari; this Court granted the writ and has heard oral arguments from the parties.

II. Standard of Review

“On certiorari review, this Court accords no presumption of correctness to the legal conclusions of the intermediate appellate court. Therefore, we must apply de novo the standard of review [for a Rule 12(b)(6), Ala. R. Civ. P., dismissal] that was applicable in the Court of Civil Appeals.”
Ex parte Toyota Motor Corp., 684 So.2d 132, 135 (Ala.1996).
The Court of Civil Appeals stated the following standard of review:
“‘The applicable standard of review for a Rule 12(b)(6), Ala. R. Civ. P., dismissal is set forth in Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993):
“ ‘ “On appeal, a dismissal is not entitled to a presumption of correctness. Jones v. Lee County Commission, 394 So.2d 928, 930 (Ala.1981); Allen v. Johnny Baker Hauling, Inc., 545 So.2d 771, 772 (Ala.Civ.App.1989). The appropriate standard of review under Rule 12(b)(6)[, Ala. R. Civ. P.,] is whether, when the allegations of the complaint are viewed most strongly in the pleader’s favor, it appears that the pleader could prove any set of circumstances that would entitle her to relief. Raley v. Citibanc of Alabama/Andalusia, 474 So.2d 640, 641 (Ala.1985); Hill v. Falletta, 589 So.2d 746 (Ala.Civ.App.1991). In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether she may possibly prevail. Fontenot v. Bramlett, 470 So.2d 669, 671 (Ala.1985); Rice v. United Ins. Co. of America, 465 So.2d 1100, 1101 (Ala.1984). We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. Garrett v. Hadden, 495 So.2d 616, 617 (Ala.1986); Hill v. Kraft, Inc., 496 So.2d 768, 769 (Ala.1986).”
“ ‘(Emphasis added.)’
“Smith v. Smith, 865 So.2d 1221, 1223-24 (Ala.Civ.App.2003) (footnote omitted).”
209 So.3d at 481-82. Further, this Court also reviews de novo questions of law concerning statutory construction. Continental Nat’l Indem. Co. v. Fields, 926 So.2d 1033 (Ala.2005).

III. Analysis

A. Insurable Interest

Section 27-14-3(a) of the Insurance Code, regarding “personal insurance,” defines “insurable interest” as
“an interest based upon a reasonable expectation of pecuniary advantage through the continued life, health, or bodily safety of another person and consequent loss by reason of his or her death or disability or a substantial interest engendered by love and affection in the case of individuals closely related by blood or by law.”
It has long been established under Alabama’s common law and statutory law that a life-insurance policy issued to a person not having an insurable interest in the life of the insured is considered a “wager” on the life of another and is therefore void as against public policy. Helmetag’s Adm’x v. Miller, 76 Ala. 183 (1884); see also Commonwealth Life Ins. Co. v. George, 248 Ala. 649, 28 So.2d 910 (1947). In *490 Mutual Savings Life Insurance Co. v. Noah, 291 Ala. 444, 448-49, 282 So.2d 271, 273-74 (1973), this Court expounded on the long-established rule requiring an insurable interest in the life of the insured:
“[T]he long-established rule that [a policy of life insurance procured or taken out by a beneficiary on the life of another] is invalid unless the beneficiary has an ‘insurable interest’ in the life of the insured applies. This rule is to the effect that a person has an unlimited insurable interest in his own life and may designate any person as his beneficiary so long as the insurance was procured or taken out by the insured and the premiums paid by him, but one taking out a policy of insurance for his own benefit, on the life of another person, must have an insurable interest in the continuance of the life of such insured. National Life & Accident Ins. Co. v. Alexander, 226 Ala. 325, 147 So. 173 [ (1933) ]; Tit. 28A, § 316, Code of Alabama, 1940 (Recomp. 1958).
“Several reasons have been assigned as the basis for the insurable interest requirement, both of which are grounded upon public policy considerations: a policy taken out by one for his own benefit on the life of another, in whom he has no insurable interest is, in substance, a wagering contract; and such a policy may hold out a temptation to the beneficiary to hasten by improper means the death of the insured. Commonwealth Life Insurance Co. v. George, 248 Ala. 649, 28 So.2d 910 [ (1947) ]; Helmetag’s Adm’x v. Miller, 76 Ala. 183 [ (1884) ].”
In other words, the public-policy rule making wager contracts void developed to discourage speculation in human life.[1] Id. At common law, this public-policy principle that prohibits a person from insuring the life of a person in whom he or she has no insurable interest also prohibited a person from assigning a policy to one who had no insurable interest in the insured’s life. See Helmetag’s Adm’x v. Miller, supra (holding that an assignment of a life-insurance policy by the insured to one without an insurable interest in the insured’s life is regarded as void as against public policy). As early as 1886, however, courts began to recognize that there were conditions that could take an insurance policy on the life of one in whom the person purchasing the policy had no insurable interest out of the category of a mere wager. In Connecticut Mutual Life Insurance Co. v. Schaefer, 94 U.S. (4 Otto) 457, 460-62, 24 L.Ed. 251 (1876), the United States Supreme Court held that the owner of a validly issued life-insurance policy could assign the policy to another having no insurable interest in the insured’s life, provided the assignment was not done by way of a cover for a wager policy:
“The essential thing is, that the policy shall be obtained in good faith, and not for the purpose of speculating upon the hazard of a life in which the insured has no interest....
[[Image here]]
“... We do not hesitate to say, however, that a policy taken out in good faith, and valid at its inception, is not avoided by the cessation of the insurable interest, unless such be the necessary *491 effect of the provisions of the policy itself.
“But supposing a fair and proper insurable interest, of whatever kind, to exist at the time of taking out the policy, and that it be taken out in good faith, the object and purpose of the rule which condemns wager policies is sufficiently attained; and there is then no good reason why the contract should not be carried out according to its terms.... ”
In 1971, the Alabama Legislature recognized as much when it enacted the Insurance Code, the purpose of which was, in part, “[t]o provide a comprehensive revision, consolidation and classification of the laws of the State of Alabama relating to insurance and to the insurance business.” Act No. 407, Ala. Acts 1971. As for assignments, the insurable-interest requirement is now codified at § 27-14-21(b), Ala. Code 1975:
“A policy of life insurance, taken out by the insured himself or by a person having an insurable interest in the life of the insured, in good faith may, unless the policy provides otherwise, be assigned to anyone as any other chose in action without regard to whether the assignee has an insurable interest in the life insured or not.”
(Emphasis added.)
The question presented in this case is whether, akin to an assignment, a validly issued life-insurance policy may, in good faith, if the policy does not provide otherwise, be modified to substitute a beneficiary, regardless of whether that beneficiary has an insurable interest in the life of the insured. The answer to this question, of course, depends on the statutory interpretation of § 27-14-3(f), which states that “[a]n insurable interest shall exist at the time the contract of personal insurance becomes effective, but this requirement need not exist at the time the loss occurs.” The Court of Civil Appeals deemed § 27-14—3(f) to be ambiguous and thus interpreted it as requiring an insurable interest to exist not only at the time the policy becomes effective, but also at any time thereafter. Liberty National, however, contends that § 27-14-3(f) unambiguously requires that an insurable interest exist only at the time the policy becomes effective. Stated differently, Liberty National argues that 27-14-3(f) requires only that the original beneficiary of a policy have an insurable interest in the insured’s life and that a validly issued policy can (unless the policy provides otherwise) be subsequently modified to name another person as beneficiary, irrespective of whether that other person has an insurable interest in the life of the insured.
In Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen, 714 So.2d 293, 296 (Ala.1998), this Court discussed the principles of statutory construction as follows:
‘“[When a court] is called upon to construe a statute, the fundamental rule is that the court has a duty to ascertain and effectuate legislative intent expressed in the statute, which may be gleaned from the language used, the reason and necessity for the act, and the purposes sought to be obtained.’
“Ex parte Holladay, 466 So.2d 956, 960 (Ala.1985). In IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992), this Court further stated with regard to statutory construction:
“ ‘Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unam *492 biguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.’ ”
Additionally, various. subsections of a statute are to be read in pari materia, i.e., they are to be construed together to ascertain the meaning and intent of each. Ex parte Jackson, 614 So.2d 405 (Ala.1993); McCausland v. Tide-Mayflower Moving & Storage, 499 So.2d 1378 (Ala.1986).
In interpreting § 27 — 14—3(f), the “[pjrinciples of statutory construction instruct this Court to interpret the plain language of a statute to mean exactly what it says and to engage in judicial construction only if the language in the statute is ambiguous.” Ex parte Pratt, 815 So.2d 532, 535 (Ala.2001). Section 27-14-3(f) specifically states that “[a]n insurable interest shall exist at the time the contract of personal insurance becomes effective, but this requirement need not exist at the time the loss occurs.” (Emphasis added.) We find the meaning of § 27-14-3® clear and unambiguous. Section 27-14-3® defines the moment in time at which the insurable-interest requirement applies as the time the contract “becomes effective.” Section 27-14-3® also states that “this requirement,” i.e., the requirement that the insurable interest shall exist at the time the contract becomes effective, “need not exist at the time the loss occurs.” Accordingly, the insurable-interest requirement does not place any restrictions on a subsequent change of beneficiary for a validly issued life-insurance policy. To interpret § 27-14-3® as requiring an insurable interest to exist beyond the time the policy is procured and/or becomes effective would require this Court to add words to the statute the legislature has chosen not to include.
To be sure there is no ambiguity that §. 27-14-3® requires an insurable interest to exist only at the time the policy becomes effective, this Court points to subsections (b) and (g) of the statute — concerning the same subject matter. Section 27-14-3(b), Ala.Code 1975, concerning procuring insurance on one’s own life, states:
“An individual has an unlimited insurable interest in his or her own life, health, and bodily safety and may lawfully take out a policy of insurance on his or her own life, health, or bodily safety and have the same made payable to whomsoever he or she pleased, regardless of whether the beneficiary so designated has an insurable interest.”
(Emphasis added.) In other words, § 27-14-3(b) provides that a person may procure insurance on his own life for the benefit of anyone. Section § 27-14-3(g), Ala.Code 1975, concerning procuring insurance on the life of another, states:
“Any personal insurance contract procured, or caused to be procured, upon another individual is void unless the benefits under the contract are payable to the individual insured, or his or her personal representative, or to a person having, at the time when the contract was made, an insurable interest in the individual insured.”
(Emphasis added.) By comparison, although § 27-14-3(b) provides that a person may procure insurance on his own life for the. benefit of anyone, § 27-14-3(g) provides that an insurance policy procured on the life of another is void “unless the benefits under the contract are payable to ... a person having, at the time when the contract was made, an insurable interest in the individual insured.” (Emphasis added.) In other words, the plain language of § 27-14-3(g) confirms that a life-insurance policy procured on the life of another is void unless “at the time when the contract was made” the proceeds are payable to someone having an insurable *493 interest in the insured. See, e.g., In re Estate of D'Agosto, 134 Wash.App. 390, 395, 139 P.3d 1125, 1128 (2006), in which the Court of Appeals of Washington was called upon to interpret a Washington statute containing language essentially identical to § 27—14—3(g):
“This common law rule that an insurable interest is required at the making of a policy was codified by the Washington legislature in 1947. ROW 48.18.030(1) provides:
“ ‘Any individual of competent legal capacity may procure or effect an insurance contract upon his own life or body for the benefit of any person. But no person shall procure or cause to be procured any insurance contract upon the life or body of another individual %mless the benefits under such contract are payable to the individual insured or his personal representatives, or to a person having, at the time when such contract was made, an inswrable interest in the individual insured.’
“The plain words of this statute make clear that the relevant time for purposes of determining an insurable interest is ‘at the time when [the insurance] contract [is] made.’ To argue that another time is relevant would require us to add wording to the plain words of the statute .... ”
(Some emphasis omitted; some emphasis added.) Thus, §§ 27-14-3(b), (f), and (g) harmoniously provide that, regarding personal insurance, an insurable interest in the life of the insured need exist only at the time the policy of insurance becomes effective, but that that requirement need not exist at the time the loss occurs. This Court further points to the distinction made by the legislature concerning the time at which an insurable interest must exist with “personal insurance” versus “property insurance.” As previously indicated, in regard to personal insurance, § 27 — 14—3(f) provides that “[a]n insurable interest shall exists at the time of the contract of personal insurance becomes effective, but this requirement need not exist at the time the loss occurs.” (Emphasis added.) The next section of the Insurance Code concerning “property insurance,” § 27-14-4(a), Ala.Code 1975, provides that “[n]o contract of insurance of property ... shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured as at the time of the loss.” (Emphasis added.) See Middleton v. Rush, 764 So.2d 1276, 1278 (Ala.Civ.App.2000)(“No contract of property insurance is enforceable except for the benefit of persons having an insurable interest in the things insured as of the time of the loss.” (emphasis added)). In enacting § 27-14-3(f), the legislature did not include language indicating that an insurable interest in personal insurance must exist at the time of the loss. Rather, it specifically stated that “this requirement,” i.e., the requirement that an insurable interest exist at the time the policy becomes effective, “need not exist at the time of the loss.” Several treatises discussing the subject of when an insurable interest must exist are in agreement with the interpretation that, in regard to property insurance, “most courts adhere to the rule that the insurable interest must only exist at the time of loss,” whereas with personal insurance, i.e., life insurance, “it is commonly said that the insurable interest must exist at the time that the contract is made, and the lack of the interest at- the time of the insured’s death is irrelevant.” Robert H. Jerry II, Understanding Insurance Law § 44, at 316-18 (3d ed.2002). Specifically, regarding life insurance,
“[a]s a contract of life insurance is generally not regarded as a contract of *494 indemnity, it is generally sufficient that an insurable interest existed at the inception of the contract, and it is immaterial that the interest ceased prior to the death of the insured unless the contract provides otherwise.”
3 Couch on Insurance § 41:26 (3d ed.). Further,
“[t]he almost universal rule of law in this country is that if the insurable interest requirement is satisfied when the policy is issued, the proceeds of the policy must be paid upon the death of the life insured without regard to whether the beneficiary has an insurable interest at the time of death. Thus, where the policy is valid at its inception by reason of the existence of an insurable interest at that time, the subsequent diminution or cessation of that interest does not invalidate the policy unless the policy itself, a statute, or an insurance regulation so provides. Statutes requiring an insurable interest have been construed as requiring merely that the insurable interest be present at the inception of the contract.”
44 C.J.S. Insurance § 374 (2007).
Based on the plain and unambiguous language employed by the legislature in § 27-14-3(f), we conclude that an insurable interest in personal insurance need exist only at the time the policy becomes effective and not at the time the loss occurs. Accordingly, insofar as the Court of Civil Appeals’ opinion interpreted § 27-14 — 3(f) to require the existence of an insurable interest after the time a policy becomes effective, its judgment is reversed.
B. Rule 12(b)(6) — Motion to Dismiss
Liberty National also argues that the Court of Civil Appeals erred in reversing the trial court’s order dismissing Barton’s negligence claim. We disagree. In Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993), this Court stated the following well settled standard for reviewing the dismissal of a complaint under Rule 12(b)(6), Ala. R. Civ. P.:
“On appeal, a dismissal is not entitled to a presumption of correctness. Jones v. Lee County Commission, 394 So.2d 928, 930 (Ala.1981); Allen v. Johnny Baker Hauling, Inc., 545 So.2d 771, 772 (Ala.Civ.App.1989). The appropriate standard of review under Rule 12(b)(6) is whether, when the allegations of the complaint are viewed most strongly in the pleader’s favor, it appears that the pleader could prove any set of circumstances that would entitle her to relief. Raley v. Citibanc of Alabama/Andalusia, 474 So.2d 640, 641 (Ala.1985); Hill v. Falletta, 589 So.2d 746 (Ala.Civ.App.1991). In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether she may possibly prevail. Fontenot v. Bramlett, 470 So.2d 669, 671 (Ala.1985); Rice v. United Ins. Co. of America, 465 So.2d 1100, 1101 (Ala.1984). We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. Garrett v. Hadden, 495 So.2d 616, 617 (Ala.1986); Hill v. Kraft, Inc., 496 So.2d 768, 769 (Ala.1986).”
Additionally, “[i]n considering whether a complaint is sufficient to withstand a motion to dismiss under Rule 12(b)(6), ... a court ‘must accept the allegations of the complaint as true.’ Creola Land Dev., Inc. v. Bentbrooke Housing, L.L.C., 828 So.2d 285, 288 (Ala.2002) (emphasis omitted).” Crosslin v. Health Care Auth. of Huntsville, 5 So.3d 1193, 1195 (Ala.2008).
In this case, Barton alleges in her complaint:
*495 “4. At the time [Benjamin Sr.] took out the insurance policy ... Nona June Miller [Benjamin, Jr.’s grandmother] was named as beneficiary. During his lifetime, [Benjamin Sr.] changed the beneficiary of said policy to himself, in accordance tuith the terms of said policy of which he was the owner. No other relevant change to the policy was made by him during his lifetime. [Benjamin Sr.] preceded [Benjamin Jr.] in death. Thereafter, [Benjamin Jr.] died. Therefore, pursuant to the terms of said policy, the proceeds of any benefits paid thereunder were payable to the estate of the said named insured, [Benjamin Jr.}.
[[Image here]]
“11. Further, the acts of [Leanne] resulted in her being unjustly enriched in an amount equal to the insurance proceeds paid to her which were rightfully payable to the Estate of [Benjamin Jr.].”
(Emphasis added.) In essence, Barton alleges that Liberty National was negligent in allowing Leanne to name herself as beneficiary of an insurance policy that was owned by Benjamin Sr. at his death and, pursuant to the terms of the policy, payable to Benjamin Jr.’s estate. At this juncture in the proceedings, however, the policy has not been produced or viewed by the trial court, nor has any discovery ensued concerning ownership of the policy, i.e., concerning who owned the policy at Benjamin Sr.’s death, and who exactly had the right to effect a beneficiary change. Accordingly, in viewing the allegations of Barton’s complaint most strongly in Barton’s favor, as we are required to do, it appears that the Barton could, under certain circumstances, maintain a cause of action against Liberty National alleging negligence on its part in allowing Leanne, either as personal representative of Benjamin Sr.’s estate or individually, to substitute herself as beneficiary on the policy insuring Benjamin Jr.’s life. Accordingly, we affirm that portion of the Court of Civil Appeals’ opinion reversing the trial court’s order dismissing Barton’s complaint.

IV. Conclusion

We reverse the Court of Civil Appeals’ judgment insofar as it interprets § 27-14-3(f) to require an insurable interest in personal insurance to exist at any point beyond the time the policy of insurance becomes effective. We affirm the judgment insofar as it reverses the trial court’s order dismissing Barton’s complaint. Accordingly, the cause is remanded to the Court of Civil Appeals for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
STUART, PARKER, MURDOCK, MAIN, WISE, and BRYAN, JJ., concur.
MOORE, C.J., concurs in the result.

. Cf., however, § 43-8-253(c), Ala.Code 1975, a part of the Probate Code:
"A named beneficiary of a bond, life insurance policy, or other contractual arrangement who feloniously and intentionally Mils the principal obligee or the person upon whose life the policy is issued is not entitled to any benefit under the bond, policy or other contractual arrangement, and it becomes payable as though the Mller had predeceased the decedent.”